IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:
DENISON FOODS, LLC.　　　　　　　　Case No. 09-40536-11
　　　　　Debtor

**DISCLOSURE STATEMENT TO ACCOMPANY THE
REORGANIZATION PLAN OF THE DEBTOR DATED
January 15, 2010**

COMES NOW Denison Foods, LLC (hereinafter sometimes referred to as "Debtor", or "Denison Foods") by and through its attorneys, Stumbo Hanson, LLP, Topeka, Kansas, and hereby files its Disclosure Statement to accompany the Reorganization Plan dated January 15, 2010.

## I. INTRODUCTION

The Debtor is providing this Disclosure Statement (the "Disclosure Statement") to all Debtor's known Creditors and interest holders in connection with the Debtor's Plan of Reorganization (the "Plan"), a copy of which accompanies the Disclosure Statement. The Plan has been developed based upon a review and analysis of the Debtor's financial condition and alternatives directed at rehabilitation thereof. The plan provides for a long-term lease and purchase option of Debtor's plant and related facilities to Quality Food Processors, LLC. Funds derived from the lease of the Debtor's facilities will be sufficient to meet ongoing administrative expenses, pay the secured claim of Crawford County for unpaid real estate ad valorem taxes on the plant, pay the secured claims of Wisconsin Community Bank, Heartland Business Branch, and retire the claims of contractors having properly perfected mechanic's liens on the Debtor's plant. The Debtor has also engaged as special counsel, the litigation firm of Frieden and Forbes, Topeka, Kansas to pursue claims for breach of duty as arise out of the spin off transaction and failure to properly capitalize the

- 1 -

Case 09-40536　　Doc# 158　　Filed 01/15/10　　Page 1 of 20

Debtor which resulted in Debtor's insolvency at the time of its inception. Funds resulting from litigation of such claims will first be applied toward repayment of those entities that have advanced fund to cover the expenses of pursuing said claims. The balance of any recovery net expenses, will distributed pro rata toward the claims of general unsecured claimants until paid in full. The equity interests as existed on the date of commencement of this case will receive a distribution only if all allowed claims are paid in full.

## II. PURPOSE OF DISCLOSURE STATEMENT AND PROCEDURE FOR PLAN CONFIRMATION

a. <u>Purpose and General Information</u>.

Pursuant to 11 U.S.C. §1125, the Debtor submits this Disclosure Statement to provide Creditors and Interest Holders with adequate information to allow them to make an informed judgment about the acceptability of the Plan. Specifically, the purpose of this Disclosure Statement is to give Creditors and Interest Holders sufficient information, as is reasonably practicable for the Debtor to provide, that would allow a hypothetical reasonable investor typical of the holders of Claims and Interests in the classes Impaired under the Plan to make an informed judgment about whether to accept or reject the Plan. A copy of the Plan accompanies this Disclosure Statement. Terms as defined in the Plan shall have the same meaning in this Disclosure Statement. The provisions of the Plan are binding upon all Creditors and Interest Holders; therefore, please read the Plan Carefully.

NO REPRESENTATIONS ABOUT THE DEBTOR, PARTICULY ABOUT THE DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY, ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE

STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANTCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR OR INTEREST HOLDER. ANY ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR OR TO THE UNITED STATES TRUSTEE WHO, IN TURN, SHALL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT OR TAKE OTHER APPROPRIATE ACTION.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CRETIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ABSOLUTE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS COMPLETE AND ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT COMPLETE AND ACCURATE INFORMATION. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY ON INTERNAL BOOKKEEPING. THE RECORDS KEPT BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE FREE OF ANY INACCURACY. HOWEVER, EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT ACCURATE INFORMATION. COUNSEL TO THE DEBTOR HAS NOT INDEPENDENLY VERIFIED ANY OF THE INFORMATION PROVIDED BY THE DEBTOR AND DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE INFORMATION PRESENTED.

ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WIH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE PLAN, AND MAY DESIRE TO CONSULT WITH LEGAL COUNSEL PRIOR TO VOTING TO ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. THE DEBTOR MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE TAX IMPACT OF THE PLAN ON ANY CREDITOR OR INTEREST HOLDER.

THE DEBTOR BELIEVES THAT THE PLAN IS FEASIBLE, FAIR AND EQUITABLE AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS.

b. Manner of Voting.

i. *Classes Entitled to Vote.* The Plan divides Claims of Creditors and Interest Holders into Seventeen (17) classes. Only classes of Creditors and Interest Holders with claims or interests impaired under a plan of reorganization are entitled to vote on a plan. Generally, and subject to the specific provisions of the Bankruptcy Code, this includes creditors and interest holders whose claims or interests, under a plan, will be modified in terms of principal, interest, length of time for payment,

or a combination of the above. Each holder of a Claim in a class that is not Impaired under the Plan is conclusively presumed to have accepted the Plan, and solicitation of acceptance from holders of such Claims is not required and will not be undertaken.

The Classes of Creditors not Impaired under the Plan are Classes 1, 2 and 3. Classes 4 through and including 17 are impaired under the Plan and the members of each of the Impaired Classes are entitled to vote to accept or reject the Plan.

    ii.   *Procedure for Voting.* All Creditors and Interest Holders entitled to vote may cast their vote by completing, dating, and signing the Ballot included with this Disclosure Statement and mailing it to:

**Tom R. Barnes II**
**Stumbo Hanson, LLP**
**2887 SW MacVicar Ave**
**Topeka, KS  66611**

**DO NOT SEND YOUR BALLOT VIA FACSIMILE OR E-MAIL.** IN ORDER TO BE COUNTED, THE COMPLETED BALLOT MUST BE RECEIVED NO LATER THAN 12:00 A.M._____, 2010.  FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.  A BALLOT DOES NOT CONSTITUTE A VALID PROOF OF CLAIM IN THE DEBTOR'S CASE.

    c.   Confirmation of the Plan.

   i.   *Solicitation of Acceptance of the Plan.* This Disclosure Statement has been approved by the Bankruptcy Court in accordance with 11 U.S.C. § 1125 and has been provided to all Creditors and Interest Holders in this Case. This Disclosure Statement is intended to assist Creditors and Interest

- 5 -

Holders with their evaluation of the Plan and their decision to accept or reject the Plan. Your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of, or before, such solicitation.

    ii.  *Votes Considered in Determining Acceptance of the Plan.* When acceptance of the Plan is determined by the Bankruptcy Court, in accordance with 11 U.S.C. § 1126 and Rule 3018 of the Federal Rules of Bankruptcy Procedure, votes of Creditors will only be counted if submitted by Creditors with Allowed Claims who are members of the classes of claims established in the Plan. If you are in any way uncertain if or how your Claim has been scheduled, you should review the Debtor's schedules and any amendments thereto which are on file with the Clerk's office of the United States Bankruptcy Court located at **240 United States Courthouse, 444 SE Quincy Street, Topeka, Kansas 66683.** Pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure, votes of Class Seventeen, whose claims are based upon being an Interest Holder in the Debtor, will be counted only if submitted by the holder of record on the date the order of the Court approving the Disclosure Statement is entered.

    iii.  *Hearing on Confirmation of the Plan.* The Bankruptcy Court has set a hearing to determine if the Plan has been accepted by the required number of holders of Claims and Interests and if other requirements for Confirmation of the Plan outlined in the Bankruptcy Code have been satisfied. The hearing on Confirmation of the Plan shall commence on _____, 2010 in the **United States Bankruptcy Court for the District of Kansas, 210 United States Courthouse, 444 SE Quincy Street, Topeka, Kansas.** Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Debtor on or before _____, 2010.

- 6 -

Case 09-40536    Doc# 158    Filed 01/15/10    Page 6 of 20

iv. *Determining if Impaired Classes Have Accepted the Plan.* At the scheduled hearing on Confirmation of Plan, the Bankruptcy Court must determine, among other things, if the Plan has been accepted by each Impaired Class. Under 11 U.S.C. § 1126(c) an Impaired Class of Claims is deemed to have accepted the Plan if Class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all Allowed Claims of Class Members actually voting have voted in favor of the Plan. Under 11 U.S.C. § 1126(d), an Impaired Class of Interests is deemed to have accepted the Plan if Class members holding at least two-thirds (2/3) in amount of the Allowed Interests of Class members actually voting have voted in favor of the Plan. Further, under 11 U.S.C. § 1129(a)(7)(A)(ii), the Bankruptcy Court must also find that each member of an Impaired Class either votes to accept the plan or will receive or retain as much under the Plan as the member would receive or retain if the Debtor were liquidated, as of the Effective Date of the Plan, under Chapter 7 of the Bankruptcy Code. This is known as the "best interests of creditors' test."

v. *Confirmation of the Plan Without the Consent of all Impaired Classes.* The Plan may be confirmed even if not accepted by all Impaired classes, if the Bankruptcy Court finds that all other requirements of Confirmation under 11 U.S.C. § 1129(a) are satisfied and certain additional conditions are met. These conditions are set forth in 11 U.S.C. § 1129(b), and require, generally, a showing that the Plan does not discriminate unfairly and that the Plan is "fair and equitable" with respect to each Class of Claims and Interests that is Impaired under, and has not accepted, the Plan. In order to be "fair and equitable" as required by § 1129(b) of the Bankruptcy Code, the Plan must provide that Unsecured Creditors and Interest Holders in non-consenting, Impaired classes will either receive or retain on account of their Claims or Interests, property of a value, as of the Effective Date of the Plan, at least equal to the value of such Claims or Interests or, if they receive

- 7 -

less than full value, no Class with a junior priority will receive or retain anything on account of such junior Claim or Interest. For Secured Creditors, the Plan will be "fair and equitable" under § 1129(b) if Secured Creditors either (i) retain the liens securing their claims and receive deferred cash payments totaling at least the allowed amount of such claim, or a value, as of the effective date of the Plan, of at least the value of the Secured Creditor's interest in such property, (ii) if the property securing their clam is to be sold, their liens will attach to the proceeds, or (iii) Secured Creditors will receive the "indubitable equivalent" of their Secured Claims. These are complex statutory provisions and this summary is not intended to be a complete statement of the law. If the Plan is not accepted by an Impaired Class or Classes, the Debtor will rely on "cramdown" provisions of § 1129(b) of the Bankruptcy Code and seek confirmation of the Plan.

### III. THE DEBTOR

On April 13, 2009, the Debtor, Denison Foods, LLC, filed a petition under Chapter 11 of the United States Bankruptcy Code. The Debtor has continued in possession of its property following the filing of the bankruptcy petition pursuant to 11 U.S.C. §§ 1107 and 1108. It is currently providing wholesale processed meats to Farmland Foods, Zarda Barbecue, Pioneer Meats, Premium Quality Foods, Midwest Organic, Advanced Foods, Cargill, Laura's Lean Meats, Plumrose USA and Shelby County Cookers. Its production plant and facility is located at Denison, Iowa. The Debtor employs approximately 60 employees, of whom 50 are based at the plant located in Denison, Iowa. For the fiscal year ended December 31, 2008, the Debtor recorded revenues of $6.5 million, resulting in a net loss of approximately $3 million for the fiscal year of 2008. For the accounting period ended December 31, 2008, the Debtor reported approximately $7.580 million in total assets and $15.5 million in total liabilities.

For the fiscal year ended December 26, 2009, the Debtor estimates approximately $5.2 million in total revenues with net loss of approximately $2.2 million for the fiscal year of 2009. For the accounting period ended December 26, 2009, the Debtor reported approximately $7.1480 million in total assets and $17.36 million in total liabilities. The Debtor's financial performance depends greatly upon capacity utilization of its plant, the market demand for its products and the prices it receives for such products. It has not been able to realize the capacity utilization of its plant because renovations thereto commenced in 2006 have not been completed.

Upon spin-off from Premium Protein Products, LLC, the Debtor started operations in November of 2006 and assumed a previous Premium Protein Products plan to expand its business making renovations to its facility to include a bacon processing component in order to more fully utilize existing facility and capacity opportunity. The plan was for Denison Foods to align itself with industry partners who would then fully utilize the plant's cooked meats and/or bacon curing and meat processing facilities which was then operating at approximately 15 to 20 percent of its capacity. Pursuant to the terms and conditions of its asset transaction and assumption agreement with Premium Protein Products, LLC and other related transaction parties including PPP Holdings LLC, MatlinPatterson Global Advisors, LLC, MatlinPatterson Global Opportunities Partners II, L.P., MatlinPatterson Global Opportunities Partners (Cayman) II, L.P., Wisconsin Community Bank, Heartland Business Branch and Intrust Bank. As a requirement of Wisconsin Community Bank, Heartland Business Branch, due to a continuing 80% USDA Rural Development bank note guarantee, Denison Foods, LLC, was to be solvent at its inception with $1,000,000.00 in net tangible working capital at closing of the transaction on November 17, 2006. To meet the solvency

–9–

requirement, Premium Protein Products, then controlled by MatlinPatterson, agreed to loan Denison Foods $1.615 million in deeply subordinated debt at closing, or such adjusted amount as would be later determined by an audit to reach the bank's and USDA guarantee solvency requirement. After the November 17, 2006 spin-off transaction, the Debtor's management learned that the $1.615 million in deeply subordinated debt was approximately a $2.480 million dollar deficit from the $1 million dollar net tangible working capital requirement and therefore attempted to separate all pre-transaction payables until this dispute was resolved. The Debtor received the required transaction financial audit from Premium Protein Products on February 15, 2007, which confirmed management's concerns that day-one equity was a negative ($1.480) million dollars versus the $1 million bank and USDA guarantee required solvency for financing and assumption which calculates to be the $2.480 million difference from what was required under the agreements memorializing the spin off. This negative position was driven by the accounts payable amount that Premium Protein Products forced upon Denison Foods being far in excess of what was agreed upon. Accordingly, Denison Foods, LLC, was not funded as a financially viable entity when it was "spun off" from its former parent company, Premium Protein Products, LLC.

Upon taking over operations of the Denison Foods facilities and until the financial audit was received, the Debtor continued renovations of the facility to bring on line the bacon processing component, other additional business and make other needed improvements to the plant to further utilize capacity and create positive financial cash-flow. Because of its day-one negative equity position resulting from the failure of Premium Protein Products and/or its related transactional parties to address, recognize and/or properly capitalize the Debtor when it was spun off, the Debtor

was not able refinance working capital or operations to include, complete or pay for the improvements that had been undertaken. The Debtor's management has continuously confronted Premium Protein Products, LLC, and the other participants in the spin off of the Denison Foods facility about the day-one negative equity position of the Debtor not being as required under the agreements related to Debtor's spin off from Premium Protein Products, but despite its demands nothing has been done by the parties who breached their duties under the agreement to remedy the situation.

Debtor in the meanwhile attempted to find alternative working capital and asset financing, but because of their day-one insolvency and downturn in the domestic financial markets, the Debtor was not able to complete any financing transaction and address accounts payable including contractors providing materials and services related to the plant renovations and improvements. Accordingly, Debtor has not been able complete intended renovations of the facility and finance working capital needed to grow the business to fully utilize the plant's production capacity. The on-going financial crisis, high energy prices and related increases in cost of utilities and materials further imperilled the Debtor's financial performance. Summarily stated, Debtor's insolvency by the transaction parties and their failure to address this issue, plus changes in the domestic financial markets eliminated any hope the Debtor had of being able to refinance its revolving credit and secured debt. Because of these factors, the Debtor found it necessary to commence this Chapter 11 proceeding.

The Debtor's facility is an anhydrous ammonia refrigerated meat processing plant. Ammonia refrigeration systems are not completely safe as ammonia is a very hazardous substance

which must be managed properly. Liquid contact or vapor from ammonia can cause injuries and even kill people. This is why it is so important to maintain the "mechanical integrity" of industrial refrigerators at the Debtor's plant. The mechanical integrity of industrial refrigerators cannot be ensured if the plant is shut down. Anhydrous ammonia is very corrosive to certain types of metal. Therefore, refrigeration piping must be periodically inspected for failed insulation/vapor barrier, rust and corrosion. Damaged and deteriorated ammonia piping requires replacement or containment of the ammonia gas cannot be ensured. (For an extensive discussion of the risks associated with industrial refrigeration plants see the *Accident Prevention and Response Manual for Anhydrous Ammonia Refrigeration Systems Operators* printed and distributed by the United States Environmental Protection Agency Region 7, epa.gov/Region7/toxics/accident_prevention_ammonia-refrigeration,pdf.

An ammonia refrigeration unit cannot merely be shut off with an expectation that the ammonia will be adequately contained. Seals on refrigerant pumps tend to fail if the operation of the system is disrupted. This coupled with disruption of regularly scheduled inspection of the operating system including refrigerant piping could result in environmental concerns. For these reasons, the Debtor has strived to maintain the integrity of the plant as an operational system.

The Debtor's equity or member interests are owned as follows:

| | |
|---|---|
| Alan Janzen as Member of Niobrara Trail, LLC | 900.00 shares |
| Bill Kruse as Member of High Tex Beef, LP | 450.00 shares |
| Cattleco, Inc | 139.00 shares |
| CPN Farms | 1,107.00 shares |
| Dinklage Feedyard, Inc. | 561.00 shares |
| Eaten Livestock, Inc. | 575.00 shares |
| Faessler Farms Limited | 1,000.00 shares |

–12–

| | |
|---|---|
| Flat Iron Cattle | 4,000.00 shares |
| Flint Hills Foods, LLC | 49,298.00 shares |
| Food Masters, Inc. | 1,500.00 shares |
| HyPlains Feeders, LLC | 500 shares |
| Midwest PMS | 2,834.00 shares |
| Mike Briggs as Member of Niobrara Trail, LLC | 225.00 shares |
| MTI Properties (Michael T. Nakamura) | 90.00 shares |
| Niobrara Trail, LLC | 1,394.00 shares |
| Seven Valley's Investment, LLC | 1,477.00 shares |
| Spargil, LLC | 1,031.00 shares |
| Wein Reis Bros | 1,303.00 shares |
| Vande Rose Farms | 1,436.00 shares |
| Yonekyu USA | 12,321.00 shares |

The Debtor has not previously filed a Disclosure Statement or a Plan of Reorganization. The Debtor has filed a Statement of Financial Affairs and Schedules of assets and liabilities. Creditors are hereby referred to these statements and schedules for the purpose of becoming fully informed as to the assets, liabilities and affairs of the Debtor as they existed on the date of filing.

### IV. MAJOR EVENTS IN THE CHAPTER 11 CASE

The Debtor has continued operations of its meat processing facility since the date of filing and has brought on line limited testing and production of contract bacon processing business. Debtor made an emergency Motion for authority to utilize Cash Collateral secured to creditor INTRUST Bank and Wisconsin Community Bank, Heartland Business Bank Branch in order to preserve and protect the value of its assets and to conduct its day-to-day operations upon filing for Chapter 11 relief. It additionally requested and obtained approval of interim financing from DW Enterprises LC, Omega Protien Energy Company LLC, CB Land LLC, H3 Enterprises LLC, and Brown Financial**,** to the extent of $300,000.00 to help meet its operating capital needs in the period after filing and subsequent to proposing and confirming a plan. The Court entered interim and final

–13–

orders approving the Debtor's requests for authority to utilize cash collateral derived from the sale of inventory and collection of accounts receivable to the extent of $310,000.00 and to obtain secured debtor-in-possession financing to the extent of $300,000.00 as referenced above, and approved the granting of security interests in and liens upon all post-petition cash, accounts receivable and inventory and priority claims to Intrust Bank who allowed use of its cash collateral and the entities who otherwise provided interim financing.

Debtor has also negotiated adequate protection of the claims of Wisconsin Community Bank, Heartland Business Bank Branch and INTRUST Bank. The adequate protection afforded INTRUST Bank was set forth in the Court's Order approving Debtor's use of cash collateral and essentially provides for monthly payments of interest in the amount of $5,812.50. Debtor is current on its adequate protection payments to INTRUST Bank.

The adequate protection of Wisconsin Community Bank, Heartland Business Bank Branch arose out of negotiations to resolve said claimant's Motion for Stay Relief and Debtor's objections thereto. The adequate protection afforded Wisconsin Community Bank provides for monthly payments of $30,000.00 through confirmation of Debtor's Plan, and stipulated plan treatment of its claim which essentially allows for it to retain all its current mortgages and security interests, payment under the plan of its secured claim at prime plus 2.75% adjusted annually; and payment of its claim including principal, interest, attorney fees and costs, at the Effective Date of the Debtor's Plan amortized over twenty (20) years with level monthly payments, subject to adjustment with interest rate changes, and with a balloon payment on October 5, 2019. The stipulation also provides for drop dead with regard to stay relief in the event of Debtor's default. Debtor is current on

–14–

payments of adequate protection payments to this claimant.

## V. ALTERNATIVES TO CONFIRMATION AND CONSUMATION OF THE PLAN

a. Alternative Plans of Reorganization.

If the requisite acceptances are not received or if the Plan is not confirmed, the Debtor, or, if the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate and propose a different plan or plans of reorganization. Such a plan or plans might involve either a reorganization and continuation of the Debtor's businesses or an orderly liquidation of assets.

With respect to an alternative plan, the Debtor's management has strived over the past few months to secure financing to effect a reorganization of its debts with its principal secured lenders, mechanics liens and key creditors with limited success. Debtor has been unable to secure interest of trade partners to acquire its facilities by way of a sale free and clear of liens pursuant to 11 U.S.C. § 363. Therefore, the Debtor believes that the Plan it proposes enables Creditors and Interest Holders to realize the greatest possible value under the circumstances, and compared to any alternative plan of reorganization, has the greatest chance to be confirmed and consummated.

b. Liquidation Analysis.

When evaluating the terms of the Plan, each Creditor and Interest Holder belonging to an Impaired Class should compare their treatment under the Plan with how they would be treated if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The liquidation analysis of the Debtor is as follows:

–15–

| Asset: | Current Estimated Value |
|---|---|
| Plant and Facility | $4,997,082 |
| Machinery, fixtures, equipment and supplies | $447,094 |
| Cash on Hand and Prepaid | $59,751 |
| Accounts Receivable | $514,207 |
| CDC Escrow Account with Wisconsin Community Bank | $22,378 |
| Escrow Account with Wisconsin Community Bank | $300,000 |
| Inventory | $256,438 |
| Breach of duty claims arising out of "spin off" transaction | Indeterminate |
| **Total** | **$6,596,950.00** |

**Liabilities:**

| Secured Claims: | Claim Amount |
|---|---|
| United States Department of Commerce | $60,000.00 |
| Wisconsin Community Bank, Heartland Business Bank Branch | $4,660,759.98 |
| INTRUST Bank | $2,900,475.00 |
| Crawford County Treasurer | $98,904.00 |
| Barnett Kragel Mechanical | $138,593.26 |
| Kahl Craft, Inc. | $43,219.47 |
| Duke Aerial Equipment, Inc. | $3,276.91 |
| Industrial Refrigeration Services, Inc. | $1,612,955.05 |
| DIP Lenders | $300,000.00 |
| **Total** | **$9,805,975.67** |

**Administrative Claims:**

| | |
|---|---|
| Legal and UST Fees | $50,000.00 |
| Chapter 7 Trustee Fees and Expenses | $50,000.00 |
| Cost of Sale of Plant, Facilities, Machinery, Equipments and Supplies (estimated at $15% of value) | 816,626.00 |
| **Total** | **$916,626.00** |

**General Unsecured Claims**     **$4,865,661.00**

**Recapitulation:**

| | |
|---|---|
| **Total Value of Assets:** | **$6,596,950.00** |
| **Less: Secured Claims** | **$9,805,975.67** |
| **Less: Priority Claims** | **$916,626.00** |

**Net Liquidation Value:     ($4,125,652.00)**

The Debtor has used its best efforts to arrive at the liquidation values given above. The values take into account environmental concerns associated with temporarily decommissioning the plant and evacuating the anhydrous ammonia refrigeration units. Also taken into consideration in arriving at value is anticipated treatment of the facility for pathogens associated with raw meat residue which would otherwise decompose throughout the plant and facilities after utilities are disconnected. In the alternative the cost of maintaining utilities and continued inspection and maintenance of the industrial refrigerant units would have to be accounted for in this analysis.

The Debtor has listed an indeterminate value for its claim against those entities who were parties to the "spin-off" of Debtor from Premium Protein Products, LLC. The management of the Debtor has concerns that if this case is converted to Chapter 7, an appointed trustee will not be as motivated to pursue the claims due to lack of interest or a perception that the cost of pursuing the claim exceeds any hope of recovery. The affiliate entities that have been providing DIP financing, management services and cash equivalents to the Debtor to keep it operating are highly motivated to aggressively pursue such claims to the benefit of all creditors and interest holders as set forth in Debtor's Plan. Accordingly, the Debtor's liquidation analysis indicates that unsecured creditors will have a greater opportunity to realize value under the Debtor's Plan than they would if the Debtor were liquidated. In fact, the liquidation analysis shows that in a Chapter 7 liquidation, unsecured creditors and current equity owners would have no opportunity for any recovery.

## VI. GOING CONCERN VALUE

The Debtor's management has strived over the past few months to obtain additional equity

from all its current Interest Holders and secured lenders to realize or capitalize upon any "going concern value" the Debtor may have at this time. Debtor has also sought to secure the interest of trade partners who might be encouraged to acquire its facilities by way of a sale free and clear of liens pursuant to 11 U.S.C. § 363. Unfortunately, the efforts of Debtor's management directed at soliciting investment in this business, long-term financing or a sale of the business as a going concern have been unsuccessful. The Hansen Family and their controlled affiliates which represent the greatest portion of the current equity ownership in the Debtor (approximately 63%) have determined that only by their continued willingness to invest time, talent and financial resources will the Debtor's business ever achieve meaningful success. Therefore, the Debtor believes that there is no quantifiable "going concern" value in which the unsecured creditors and current equity owners might otherwise expect to share.

## VII. SUMMARY OF DEBTOR'S PLAN

The Debtor's Plan of Reorganization dated January 15, 2010, is being filed simultaneously with this Disclosure Statement. In summary, the Plan anticipates approval of a Motion to Lease with an option to purchase the facility to Quality Food Processors, LLC, an entity owned by Todd Hansen and Shon Hansen. The lease contains an option to purchase the facility at a future date. The revenue derived from the lease of the Debtor's facilities will be sufficient to meet ongoing administrative expenses, pay the secured claim of Crawford County for unpaid real estate ad valorem taxes on the plant, pay the secured claims of Wisconsin Community Bank, Heartland Business Branch, INTRUST Bank and Crawford County Development Corporation, and retire the claims of contractors having properly perfected mechanic's liens on the plant and the claims of the DIP

Lenders.

The claim of Wisconsin Community Bank, Heartland Business Bank Branch, will be restructured under the Plan and paid in equal monthly payments of principal and interest over a twenty (20) year amortization period. Interest will be calculated at prime plus 2.75% (currently 6%), and adjusted as provided in current loan documents. A balloon payment will become due of principal unpaid on October 5, 2019. A portion of the Secured Claim of Intrust Bank will be paid out of lease payments received from Quality Food Processors, LLC, and a portion its claim will be subordinated to unsecured debt paid a pro rata share of any recovery on the claim the Debtor plans to bring against those responsible for the failure to fund the Debtor as a financially viable entity when it was "spun off" from its former parent company, Premium Protein Products, LLC. The Debtor has engaged as special counsel, the litigation firm of Freiden and Forbes, Topeka, Kansas, to pursue claims for breach of duty as arise out of the spin off transaction and failure to properly capitalize the Debtor which resulted in Debtor's insolvency at the time of its inception.

The properly perfected mechanic's lien creditors will be paid out of the rental payments from Quality Food Processors, LLC. They will receive the allowed amount of their claims together with interest at the rate of 5.0% in equal monthly payments of principal and interest over a twenty (20) year amortization period.

DIP Lenders will be repaid $300,000 in DIP financing approved for the Debtor over a twenty year amortization of principal and interest at 8% per annum. The Hansen Family related entities that have provided management services and cash equivalents to the extent of approximately $328,990, will be allowed to participate as general unsecured claimants entitled to a pro rata share of

–19–

Case 09-40536    Doc# 158    Filed 01/15/10    Page 19 of 20

any recovery from such claim as well.

Creditors having allowed unsecured claims will share pro rata in the remaining recovery, net of expenses of litigation, realized from the Debtor's claim(s) for breach of duty related to the manner by which it was spun off as insolvent at the transaction which brought about Debtor's existence. Interest Holders being composed of the current equity in the Debtor will receive their pro rata share of any recovery net of litigation expenses, realized from the aforementioned claims for breach of duty in capitalizing the Debtor at its inception, in excess of what is necessary to pay in full all other claims set forth above.

## VIII.   EFFECT OF CONFIRMATION

The provisions of the Debtor's Plan of Reorganization, if confirmed shall bind the Debtor, all Creditors, Interest Holders, and any entity acquiring property under the Plan, whether or not the Claim or Interest of such Creditor, Interest Holder, or entity has accepted the Plan.

Dated:  January 15, 2010          Denison Foods, LLC


By:  ____s/ Todd C. Hansen_____
TODD C. HANSEN, President

Presented By,
**STUMBO HANSON, LLP**

By:  ____s/ Tom R. Barnes II_____
**TOM R. BARNES II,** #13437
2887 S.W. MacVicar Avenue
Topeka, KS  66611
(785) 267-3410; facsimile (785) 267-9516
tom@stumbolaw.com
Attorneys for Debtor